IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

**SHEILA FAWN STOVER,**

    **Plaintiff,**

**vs.**                                                 **CIVIL ACTION NO. 5:21-CV-00510**

**KILOLO KIJAKAZI,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered September 13, 2021 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Brief in Support of Complaint and Motion for Remand and Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 13, 14)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** Plaintiff's motion for remand (ECF No. 13), **GRANT** Defendant's request to affirm the decision of the Acting Commissioner (ECF No. 14); **AFFIRM** the final decision of the Acting Commissioner; and **DISMISS** this matter from this Court's docket for the reasons stated *infra*.

1

**Procedural History**

The Plaintiff, Sheila Fawn Stover, (hereinafter referred to as "Claimant"), protectively filed her application for Title II benefits on June 7, 2019 alleging disability as of June 14, 2014 because of "memory issues cognitive", bipolar disorder, "both arms rotator cuffs (left arm surgery)", anxiety and depression. (Tr. at 15, 194, 227) Her claim was initially denied on September 25, 2019 (Tr. at 98-113) and again upon reconsideration on February 17, 2020 (Tr. at 115-130). Thereafter, Claimant filed a written request for a hearing on March 19, 2020 (Tr. at 149-150).

An administrative hearing was held on December 17, 2020 before the Honorable Joseph T. Scruton, Administrative Law Judge ("ALJ"). (Tr. at 39-73) On January 19, 2021, the ALJ entered an unfavorable decision. (Tr. at 12-38) On March 18, 2021, Claimant sought review by the Appeals Council of the ALJ's decision. (Tr. at 189-193) The ALJ's decision became the final decision of the Acting Commissioner on August 2, 2021 when the Appeals Council denied Claimant's Request for Review. (Tr. at 1-6)

On September 10, 2021, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant (hereinafter referred to as "Commissioner") filed an Answer and a Transcript of the Administrative Proceedings. (ECF Nos. 8, 9) Subsequently, Claimant filed a Brief in Support of Complaint and Motion for Remand (ECF No. 13), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 14), to which Claimant filed her Reply (ECF No. 15). Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 53 years old as of her date last insured ("DLI"), defined as a "person closely

approaching advanced age." See 20 C.F.R. § 404.1563(d). (Tr. at 32) Claimant earned a Master's degree in education and had worked as a special education teacher for over 15 years. (Tr. at 228)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The

Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." Id. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. § 404.1520a(c). Those sections provide as follows:

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listing of Impairments in appendix 1 to this subpart.
> (4) When we rate your degree of limitation in these areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale

represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1). Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ determined that Claimant met the requirements for insured worker status through December 31, 2019. (Tr. at 18, Finding No. 1) Next, the ALJ determined that Claimant had not engaged in substantial gainful activity since the alleged onset date of June

12, 2014 through her DLI of December 31, 2019. (Id., Finding No. 2)

At the second inquiry, the ALJ found that Claimant had the following severe impairments: left shoulder impingement and rotator cuff tear; residual effects open acromioplasty; coracoacromial ligament resection, and exploration of rotator cuff; left shoulder adhesive capsulitis; right shoulder impingement, arthropathy, and rotator cuff tear; myalgia; cervical degenerative disc disease; leg length discrepancy; generalized anxiety disorder; post-traumatic stress disorder; dysthymic disorder; major depressive disorder; and cognitive disorder. (Id., Finding No. 3)

At the third inquiry, the ALJ concluded through her DLI of December 31, 2019, Claimant's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id., Finding No. 4) The ALJ then found that through her DLI, Claimant had the residual functional capacity ("RFC") to perform light work

> except she could sit, stand, and/or walk for six hours in an eight-hour workday; lift and carry a maximum of five to 10 pounds; never overhead reach, and occasionally reach in other directions; occasionally perform handling; and never crawl or climb ladders, ropes, or scaffolds. The claimant had attention, concentration, and comprehension adequate for simple, routine tasks in a work environment, and had concentration, persistence, and pace adequate to perform a full workday, with normal employer-provided breaks at approximately two-hour intervals.

(Tr. at 21, Finding No. 5)

At step four, the ALJ found Claimant was not capable of performing her past relevant work through her DLI. (Tr. at 31, Finding No. 6) In addition to the immateriality of the transferability of job skills, Claimant's age, education, work experience, and RFC, the ALJ determined that there were other jobs that existed in significant numbers in the national economy that Claimant could perform. (Tr. at 32, Finding Nos. 7-10) Finally, the ALJ determined Claimant had not been under

a disability from June 12, 2014 through her DLI. (Tr. at 33, Finding No. 11)

**<u>Claimant's Challenges to the Commissioner's Decision</u>**[1]

---

[1] The undersigned finds it necessary to make clear that Counsel for the Claimant submitted the IDENTICAL brief for Claimant's appeal of this 2021 final decision that Counsel filed for Claimant's appeal of the 2018 final decision. By "identical", the undersigned means: THE EXACT SAME BRIEF IN 2022 THAT COUNSEL FILED IN 2019. The 2022 brief (ECF No. 13) does not even suggest that it is appealing the 2021 matter, but instead, asks this Court to "remand" the "Notice of Decision-Unfavorable, dated January 3, 2018". That matter was previously briefed and decided by this Court in 2019! Not only was the brief identical, even the "Certificate of Service" attached to the brief is dated for "April 29, 2019" and was served upon "Gregory P. Neil" who is not even the Assistant United States Attorney of record in this matter. (See ECF No. 13 at 7 in case number 5:21-cv-00510 and ECF No. 15 at 7 in case number 5:19-cv-00062).

What makes this even more outrageous is that Counsel for the Claimant requested that this Court grant a continuance to allow him to file the initial brief. (ECF No. 11) The undersigned, as a matter of course, granted the motion to extend the time for filing the initial brief. (ECF No. 12) However, Counsel for the Claimant filed THE EXACT SAME BRIEF IN 2022 THAT HE FILED IN 2019. The undersigned is at a complete loss to understand what was Counsel's purpose for requesting an extension to file the initial brief, but only to file THE EXACT SAME BRIEF IN 2022 THAT HE FILED IN 2019? From henceforth, the undersigned will no longer grant ***this*** Counsel's motions to extend briefing as a matter of course, but will require this Counsel to submit grounds suggesting that there are legitimate reasons for the motion. Therefore, in the future, this Counsel must file the motion seeking an extension of time to file a brief in sufficient time so that a response can be filed by opposing counsel, as opposed to filing it on the date brief is due.

Nevertheless, in the Reply brief, Counsel for the Claimant concedes the initial brief is the identical brief as filed in the prior appeal, but nonetheless asserts that this more recent ALJ decision is not supported by substantial evidence (ECF No. 15). While Counsel for the Claimant references an "original 2021 memorandum" in the Reply brief (<u>Id</u>. at 1, 2), the undersigned presumes Counsel for the Claimant is referencing arguments set forth in the Request for Review that was submitted to the Appeals Council following the ALJ's entry of the unfavorable January 19, 2021 decision. (See Tr. at 191-193)

As an additional matter, the undersigned notes that in the Reply brief, Counsel for the Claimant cites caselaw that is outdated, as it recognized a standard for evaluating medical opinion evidence that is no longer pertinent in SSA appeals. While the standard implemented for evaluating medical opinions for claims filed after March 27, 2017 is not at issue in this appeal, it is nevertheless concerning that Counsel cites <u>Tyler v. Weinberger</u>, 409 F.Supp. 776 (E.D. Va. 1976), and notes "where a ***magistrate*** replaced his own opinion for that of a medical expert." (***emphasis*** added). (See ECF No. 15 at 2) It is significant and also troubling to the undersigned that Counsel's citation of that case did not involve a "magistrate" ***at all*** – it only concerned an ***ALJ*** who substituted his own opinion in place of the medical expert opinion. It is also imperative for the undersigned to stress to Counsel that the title "magistrate" no longer exists in federal courts: the title "magistrate" had been changed to "magistrate judge" in ***1990***. See Judicial Improvements Act of 1990, 104 Stat. 5089, Pub. L. 101-650, §321 (1990) ("After the enactment of the Act, each United States magistrate . . . shall be known as a United States magistrate judge.") It is an important distinction that Counsel for the Claimant has failed to recognize. See <u>United States v. Higby</u>, No. 4:15-CR-0142 JAJ, 2015 WL 13914071 (S.D. Ia. Dec. 2, 2015). Thus, the word "magistrate" is no longer appropriately used as a noun in federal courts, but only as an adjective, indicating the *type* of judge to which one is referring. It is the equivalent of calling a district judge, "district", a bankruptcy judge, "bankruptcy", or a circuit judge, "circuit". Although the official title is United States Magistrate Judge, the proper way to refer to a magistrate judge orally or in writing is "Judge". Counsel is reminded to use the correct title in the future when referring to any magistrate judge.

Claimant argues that the ALJ erred by finding Claimant remained capable of performing the job of an "usher" (DOT[2] 344.677-014), which conflicts with her treating physician's opinion[3] that she cannot perform overhead reaching. (ECF No. 15 at 3)

The Commissioner[4] argues that the ALJ's decision is supported by substantial evidence: the RFC assessment is corroborated by the medical evidence from the adjudicated period and is supported by Claimant's subjective statements and daily activities, as well as the medical opinion evidence. (ECF No. 14 at 7-10) Further, the ALJ was entitled to rely upon vocational expert testimony, who identified at least one occupation in the national economy that Claimant could still perform. (Id. at 10-11) District courts within the Fourth Circuit have found that 3,000 jobs in the national economy is a "significant number" that complies with an ALJ's fifth step finding, and because the vocational expert testified there were at least 31,800 usher jobs in the national economy, the ALJ met his fifth step burden. (Id. at 11) The Commissioner contends that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 12)

**The Relevant Evidence of Record**[5]

---

[2] **D**ictionary of **O**ccupational **T**itles

[3] Claimant fails to identify which treating physician opined (or when) she could not perform overhead reaching, however, from the undersigned's review of the "original 2021 memorandum" and the ALJ's written decision, it appears that Claimant is referencing her orthopedic provider, George K. Bal, M.D.; the record indicates Dr. Bal treated Claimant from July 2020 through October 2020 (Tr. at 668-729, 730-843, 844-922, 923-1001, 1002-1039).

[4] The Commissioner points out that because Claimant has submitted the same brief that was previously filed in her prior appeal of an earlier unfavorable ALJ decision to this Court, she is therefore unable to truly respond to Claimant's initial brief. (ECF No. 14 at 1-3; see also ECF No. 15 in civil action number 5:19-cv-00062) However, the Commissioner asserts that because this Court affirmed the ALJ's unfavorable decision dated January 3, 2018 (See Stover v. Saul, No. 5:19-cv-00062, 2019 WL 2881543 (S.D.W. Va. July 3, 2019)), and that matter remains final in all respects, for purposes of judicial economy and the doctrine of *res judicata*, this Court should not revisit Claimant's arguments set forth in her Brief in Support of Complaint and Motion for Remand (ECF No. 13). (ECF No. 14 at 1-3)(citing Grose v. Cohen, 406 F.2d 823, 825 (4th Cir. 1969)("Application of the doctrine [of *res judicata*] often serves a useful purpose in preventing relitigation of issues administratively determined")(internal citations omitted).

[5] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings.

The undersigned has considered all evidence of record pertaining to Claimant's arguments and discusses it below.

**The Administrative Hearing**[6]

Claimant Testimony:

Claimant testified that she is right-handed, and stated that her right shoulder had a rotator cuff tear during the two-year period of 2018-2019. (Tr. at 49) She had surgery on her right shoulder, which helped decrease the pain, but she has no strength in this shoulder. (Tr. at 49-50) If she does any type of exertional activity, her pain flares up, and she always sleeps with a heating pad on it because it hurts during the night. (Tr. at 50) She stated that the pain in her right shoulder is aggravated by doing laundry, mopping, sweeping, or using the riding lawn mower. (Id.) Prior to having shoulder surgery, Claimant testified that her pain was rated as an 8; after surgery, she rated the pain a 3. (Tr. at 50-51) Although she admitted the surgery helped reduce her pain, she cannot lift as much – she estimated that she could lift about two pounds for about five minutes, but no more than five pounds, and she can lift her right arm to a ninety-degree angle. (Tr. at 51) She testified she had good range of motion with that arm, but cannot lift anything beyond a ninety-degree angle. (Tr. at 51-52)

Regarding her left arm, Claimant testified that she had a rotator cuff tear in her left shoulder as well, and if she does not exert herself, her pain in that arm is a 2; she can lift more with her left arm, about eight pounds. (Tr. at 52)

---

[6] The ALJ recognized that the prior adjudicatory period, as of January 3, 2018, did not warrant a reopening, and focused on the medical treatments and events in 2018-2019, prior to Claimant's DLI. (Tr. at 15-16, 22, 43, 47-48) Additionally, given Claimant's counsel's representations, and from the ALJ's review of the evidence of record prior to the start of taking testimony, the hearing centered on Claimant's ongoing shoulder treatments, as there had been no significant change in her mental impairments. (Tr. at 46-47) As Claimant's appeal only concerns the ALJ's fifth step findings, and focuses on the conflict with the fifth step finding and Claimant's shoulder issues, the undersigned likewise focuses on that evidence procured during the administrative hearing.

On an average day, Claimant testified that she usually wakes up at 4:00 a.m., lets her dog out, and has a cup of coffee. (Tr. at 58-59) She'll watch the news, check Facebook, eats breakfast which is usually a bowl of instant oatmeal, takes her morning medications and fees the cats and dog. (Tr. at 59) She has several cats and cleans their litter boxes twice a day. (Id.) She does laundry, which takes all day, and she's in pain by the time she's finished. (Id.) To alleviate her pain, she uses ice and a heating pad. (Id.)

Claimant testified that she does not sleep well, due to aching in her shoulders. (Tr. at 64) She does not bathe every day, but will take a shower if she's going out somewhere, but otherwise does not have problems washing herself. (Tr. at 64-65) However, since her shoulder surgery, she endorsed not being able to clean herself well after having a BM and unable to wear a bra. (Tr. at 65-66)

Vocational Expert ("VE") Testimony:

The ALJ asked the VE whether jobs existed for an individual of Claimant's age, education, and work background with the controlling RFC, *supra*, and the VE responded that an usher (DOT 344.677-010) is the "only one" that would fit that hypothetical. (Tr. at 68-70) The VE further testified that with the usher job, there would not be any overhead reaching activity, and limited to occasional reaching. (Tr. at 71) The VE further testified that "there's really no lifting in this occupation." (Tr. at 72)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

As an initial matter, as noted by the ALJ, in order to be entitled to DIB in this case, Claimant must establish disability on or before her DLI, December 31, 2019. (Tr. at 15-16, 22) See 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). A claimant who first satisfies the medical requirements for disability only after her DLI will not be entitled to DIB benefits. 20 C.F.R. § 404.131(a). Accordingly, as Claimant does not contest that the prior adjudicated period is subject to reopening, or that there was an error concerning same, the relevant period in this case for purposes of DIB is after January 3, 2018, the prior adjudicated period, through Claimant's DLI, December 31, 2019.[7] (Tr. at 43, 47, 48)

---

[7] See 20 C.F.R. § 404.957(c)(1) ("The administrative law judge decides that there is cause to dismiss a hearing request entirely or to refuse to consider any one or more of the issues because the doctrine of res judicata applies in that we have made a previous determination or decision under this subpart about your rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial

As noted *supra*, Claimant fails to specify which of her medical providers opined she was unable to perform overhead reaching, or when this opinion was made. However, in his written decision, the ALJ explicitly considered an October 2020 opinion provided by Claimant's orthopedic provider, noting

> they cautioned her to avoid overhead lifting as that can increase her pain. It was explained to her that she does not have a rotator cuff and therefore lifting weight out away from her body or up over her head she will not be able to if it is heavy. We would recommend icing her shoulder for now and resting to let things calm down.

(Tr. at 29, 1020)[8] The ALJ determined this opinion unpersuasive because it was given well after Claimant's DLI and "does not clearly relate back to the period at issue, considering the claimant's right shoulder surgery in July 2020 and subsequent report of aggravating her shoulder pain after she attempted to lift 20 pounds overhead." (Id.) The ALJ further explained that the "duration of the proposed limitations is also unclear, given the context of the shoulder surgery and re-injury." (Tr. at 29-30) Additionally, the ALJ determined that even if the limitations were intended as permanent restrictions, he observed that they "seem overstated" compared to the reported findings from the consultative examination in September 2019 (Tr. at 30, 574-576) and in "other encounters as previously reviewed (e.g., B4F/6, B4F/10)." (Tr. at 30, 467, 471)[9]

---

action"); see also 20 C.F.R. § 404.950(f) ("An issue at your hearing may be a fact that has already been decided in one of our previous determinations or decisions in a claim involving the same parties, but arising under a different title of the Act or under the Federal Coal Mine Health and Safety Act. If this happens, the administrative law judge will not consider the issue again, but will accept the factual finding made in the previous determination or decision unless there are reasons to believe that it was wrong.").

[8] The undersigned notes that this treatment record indicates that Claimant was three weeks out from a right shoulder arthroplasty that was performed on July 29, 2020; it was noted that Claimant "tried lifting 20 pounds up over her head and she was unable to do it. She reports that was this week and therefore her shoulder has been more painful since that occurred. She has not really been doing a home exercise program. She reports she has just been working in the yard. She continues to remain active." (Tr. at 1020)

[9] The ALJ references treatment notes dated May 10, 2019 and November 14, 2018 from Debra C. Sams, D.O., who noted "inspection and palpation of bones, joints, and muscles is unremarkable". In any event, the prior findings clearly fall within the relevant period at issue in this appeal.

Claimant only offers a conclusory argument and does not explain how the ALJ "wants to 'fudge' the treating physician's opinion" (ECF No. 15 at 3) by finding Claimant remained capable of performing the work of an usher during the *relevant period* at issue, let alone explain how her treating provider's opinion conflicts with the ALJ's fifth step determination. Further, Claimant fails to identify where in the opinion, or even in the record at large, that Claimant was incapable of overhead *reaching*, as the opinion reviewed by the ALJ indicated her provider only "cautioned" her to avoid overhead *lifting*. Thus, to that extent, Claimant has essentially waived this challenge on appeal. Erline Co. S.A. v. Johnson, 440 F.3d 647, 653 n.7 (4th Cir. 2006)(a "[c]onclusory remark is insufficient to raise on appeal any merits-based challenge"); accord Sedghi v. PatchLink Corp., 440 Fed. Appx. 165, 167 (4th Cir. 2011)("By advancing only a conclusory argument, Sedghi has likely waived the issue.") In any event, because the ALJ expressly considered Claimant's treating physician's opinion that she should avoid overhead lifting, and not that she cannot perform overhead reaching at all as proffered by Claimant, the undersigned finds this argument lacks merit.

DOT Consistency at the Fifth Step of Sequential Evaluation Process:

At the final step in the sequential evaluation process, the ALJ determined that Claimant could perform the light and unskilled work as an usher. (Tr. at 33) The ALJ noted the vocational expert testified that the job is classified as light because of its standing and walking demands, and that it did not require any significant lifting. (Id.) The ALJ then determined that "to the extent the vocational expert's testimony is in conflict with the information contained in the DOT, the undersigned finds that there is a reasonable explanation for the conflict." (Id.) The ALJ noted that pursuant to Social Security Ruling (SSR) 00-4p, evidence from vocational experts can include information not listed in the DOT, which is one reasonable explanation for an apparent conflict

with the DOT, and in this case, the vocational expert's professional experience is an acceptable source of information in supplement to the information contained in the DOT – thus, the ALJ found the vocational expert's testimony consistent with the DOT. (Id.)

> The Fourth Circuit has held "Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." Pearson v. Colvin, 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. Radford, 734 F.3d at 296; see also Brown v. Colvin, 639 Fed. App'x. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding 'in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly made clear, the ALJ must provide a sufficient explanation of his findings to allow for meaningful appellate review. See Mascio, 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) (holding that without an adequate explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination").

See, Cunningham v. Berryhill, No. 3:16-cv-02525, 2017 WL 1259587 (S.D.W. Va. Mar. 31, 2017) (Tinsley, M.J.). The pertinent law clearly indicates that "[w]hen a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." See, Policy Interpretation Ruling: Titles II And XVI: Use Of Vocational Expert And Vocational Specialist Evidence, And Other Reliable Occupational Information In Disability Decisions, SSR 00-4p, 2000 WL 1898704, at *4. As stated *supra*, it remains the exclusive duty of the ALJ to identify any conflicts in the evidence and to resolve them. Indeed, the burden of proof shifts to the ALJ at the fifth step of the sequential evaluation process, because "[i]n order to support a finding that you are not disabled at this fifth step . . . we are responsible for providing evidence that demonstrates that other work exists . . . that you can do, given your residual functional capacity

and vocational factors." See 20 C.F.R. § 404.1560(c)(2). In determining the existence of jobs that a claimant can perform, the ALJ will consider both the DOT and a vocational expert's testimony. See Id. § 404.1566. As noted by the ALJ, SSR 00-4p expressly allows him to rely upon a vocational expert's "experience in job placement or career counseling" among reasonable bases for relying on the evidence from the vocational experts rather than the DOT. 2000 WL 1898704, at *2.

Returning to the usher job identified by the vocational expert, the DOT description indicates that there is occasional reaching. See DICOT 344.677-014 (G.P.O.), 1991 WL 672865. Though this description does not specify overhead reaching, it does not facially conflict with Claimant's orthopedic provider's October 2020 opinion that should "avoid overhead *lifting*" (Tr. at 1020) Indeed, the vocational expert's testimony does not conflict with Claimant's provider's opinion, as he explicitly testified there would not be any overhead reaching activity (Tr. at 71) and "there's really no lifting in this occupation." (Tr. at 72) The ALJ also specifically provided a lift and carry maximum of five to ten pounds and no overhead reaching in the controlling hypothetical to the vocational expert. (Tr. at 21, 69-70)

Thus, pursuant to SSR 00-4p, the ALJ was entitled to rely on the vocational expert's testimony where the DOT is unclear as to whether a claimant can perform a job. As shown by the vocational expert's testimony, the ALJ met his fifth step burden by showing there were a "significant number of jobs" (31,800) for the usher job and that Claimant could still perform this job despite her limitations. (Tr. at 33) In short, the ALJ's fifth step finding and conclusion are supported by substantial evidence.

Accordingly, the undersigned **FINDS** that the ALJ met his burden of proof at the fifth step of the sequential evaluation and the ALJ's determination that the vocational expert's testimony

was compliant with the DOT is supported by substantial evidence. In sum, the undersigned **FINDS** ALJ's unfavorable decision is supported by substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Claimant's request for remand (ECF No. 15), **GRANT** the Defendant's request to affirm the decision below (ECF No. 16), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d

91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Volk, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: May 18, 2022.

Omar J. Aboulhosn
United States Magistrate Judge